UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

MAJOR CALHOUN                        )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )        Case No. 2:14 CV 88 CDP
                                     )
CORIZON CORRECTIONAL                 )
HEALTH CARE, et al.,                 )
                                     )
        Defendants.                  )

## MEMORANDUM AND ORDER

In this pro se § 1983 action, Plaintiff Major Calhoun alleges defendants,

health care providers[1] at the correctional facility where Calhoun had been housed,

violated the Eighth Amendment by failing to deliver adequate medical care for his

injured wrist.   He claims initial x-rays of his wrist in 2011 indicated surgery was

necessary, but defendants did not provide surgery until 2014.  He avers defendants'

delay in providing proper medical treatment has resulted in a permanent loss of

mobility in his right wrist and hand as well as chronic pain.  Defendants have filed

a motion for summary judgment seeking to dismiss Calhoun's claims.  Although

Calhoun filed a response to defendants' motion as well as a response to

---

[1] Defendant Corizon, LLC contracts with the Missouri Department of Corrections to provide
medical services to offenders.  Defendant Kendis Archer, M.D. was employed as a licensed
physician at the Northeast Correctional Center during the relevant time period.  Defendant
Roschell Davis was employed as the Health Services Administrator at the NECC during the
relevant period.  And defendant Thomas Bredeman, M.D. was employed as the State Regional
Medical Director for Corizon during the relevant period.

defendants' reply, neither response provides admissible evidence to support his claim that defendants actually knew he needed surgery in 2011 and were deliberately indifferent to that serious need. Calhoun has also filed repeated requests for appointment of counsel and other requests seeking additional time to respond to the motion because he has not had access to his legal documents because of an extended stay in administrative segregation. In one of his requests he indicated he was awaiting transfer to another facility, and asks that he be given additional time after the expected transfer to file an additional response to the motion. Last week he filed a notice of change of address indicating that he had, in fact, been transferred to a different prison.

Because I continue to find that this case is highly fact-based and there is no reason Calhoun cannot investigate and present facts relating to his allegations on his own, I will again deny his requests for counsel. However, because Calhoun has apparently been in administrative segregation without access to his legal documents for an extended period, I will grant his motion for an extension of time to submit a more complete response to defendants' motion for summary judgment.

## Discussion

As noted above, Calhoun claims that he was seen by healthcare providers at the Northeast Correctional Center in 2011 regarding pain in his right wrist. In his verified complaint he says that he was seen by a prison doctor who ordered x-rays

and told him that his wrist was "simply sprained." The doctor ordered and he was provided with a splint. He alleges that he then had "numerous encounters" with defendants and reported consistently worsening pain. He alleges that after an x-ray in 2013 he was told that his condition had become more serious, and the prison made an appointment for his to see an outside specialist. He alleges that the outside doctor, Dr. Wilson, "clearly informed Plaintiff that surgery was indicated from the start (2 year prior), and that had the surgery been done in the beginning, the condition could have been corrected. Now however, it is likely that Plaintiff will suffer severe pain for the rest of his life." He then alleges that the doctor gave "specific orders to the medical personnel at the prison facility, which were not followed," although surgery was eventually performed. He alleges that as a result of the delay in treatment he has permanently lost mobility in his right wrist and hand and will suffer from pain for the rest of his life.

Medical evidence submitted by defendants in support of their motion for summary judgment shows that in November 2011 Calhoun was seen by defendant Dr. Kendis F. Archer about his wrist pain. Dr. Archer immediately ordered x-rays of Calhoun's wrist. The x-rays, which were read by Dr. Kent McNutt, showed no findings of acute fracture or dislocation and an incidental finding of a "small corticated ossicle," which Dr. McNutt believed probably represented "sequela from an old avulsion injury probably originating from the scaphoid." In December

2011, Dr. Archer ordered a right wrist sleeve for Calhoun and prescribed Tramadol, a narcotic pain reliever.  Defendants have provided sixteen Medical Service Requests that were submitted by Calhoun between January 2012 and May 2013, none of which mentioned pain in his right wrist.  Finally, in mid-May 2013, Calhoun complained about pain in his right wrist again, and Dr. Archer immediately ordered another x-ray.  Dr. McNutt again read the x-ray and compared it to the 2011 x-ray.  He noted his impression as "findings of old ununited fracture of the scaphoid similar to previous study."  After this result came in, Dr. Tomas Cabrera requested a referral for Calhoun to an orthopedist.  In his referral request, Cabrera noted that Calhoun had mild swelling over the fracture site and mild pains upon movement of his wrist and thumb.  Before referral, Dr. Thomas Bredeman, Corizon's state regional medical director, told Dr. Cabrera to first send the x-rays to orthopedist Dr. Joyce Wilson for review.

In July 2013, Dr. Cabrera's notes indicate he spoke with Dr. Wilson who opined that Calhoun had an ununited fracture of his scaphoid.  However, she felt that because of the size of the bone fragment there was nothing surgical she could do, and she was not sure removing the fragment would help.  She recommended steroid injections, a wrist brace, and pain medication.  Dr. Wilson's recommended treatment was provided to Calhoun by Dr. Wilson and the correctional facility nurses and doctors.  When Calhoun's pain continued through February 2014, Dr.

Wilson determined that it was appropriate to attempt to surgically remove the bone fragment. She performed the surgery in March 2014, and at a visit two months later, her notes indicate Calhoun reported that the pain he had experienced prior to surgery was completely resolved. She told him at that time that he could resume normal use of his hand and should continue to work on improving the range of motion in his wrist.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th 2012). To prove his deliberate indifference claim, Calhoun is required to show he suffered from an objectively serious medical need and that defendants knew of the need but deliberately disregarded it. *Meuir v. Green County Hail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007). "Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (internal quotation marks and citation omitted). Deliberate indifference may be found where "medical care [is] so inappropriate as to evidence intentional maltreatment." *Id*. In other words, plaintiff must show something more than medical malpractice – he must show that defendants actually knew of a serious need and ignored it or were otherwise deliberately indifferent to it.

Even assuming that plaintiff's statements about what Dr. Wilson told him were admissible evidence, at most it would demonstrate that Dr. Archer's decision in 2011 to treat him conservatively, with pain medication and a brace, was medical malpractice, not deliberate indifference. *See Dulany v. Carnahan*, 132 F.3d 1234, 1242 (8th Cir. 1997) ("showing that another physician might have ordered different tests and treatment does not show deliberate indifference"); *Walker v. Campbell*, No. 2:12cv00026 ERW, 2013 WL 6007623, at *7 (E.D. Mo. Nov. 13, 2013) ("where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in tort law"). Doctors are entitled to exercise their medical judgment. *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). Based on the evidence before me now, this appears to be what Dr. Archer did in 2011. In order to overcome defendants' motion for summary judgment, Calhoun must prove that defendants, in 2011, knew that failure to provide surgery for his wrist created an excessive risk to Calhoun's health, and then still failed to act on that knowledge. *See Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997).[2]

---

[2] To the extent Calhoun alleges a delay by defendants in providing medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 501 (8th Cir. 1997). Where a deliberate-indifference claim is based on a delay in medical treatment, an inmate must place verifying evidence in the record establishing that the delay had a detrimental effect. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

In addition to suing the individual health care providers, Calhoun names Corizon Correctional Health Care as a defendant, and alleges that Corizon has a custom and practice of not disclosing to prisoners the nature of their injuries in order to save money. In response to the summary judgment motion, Calhoun has submitted affidavits of other prisoners which he believes show a pattern of deliberate indifference to medical needs. But unless Calhoun can prove that he was himself a victim of a constitutional violation, these affidavits from others do not show that *he* was the victim of any unconstitutional custom or practice.

In the interests of justice, because Calhoun has indicated that he has not had access to his legal documents while he was in administrative segregation and during transit to his new prison, I will give him another opportunity to file a supplemental response to the motion for summary judgment. In any response Calhoun must include a response to each numbered paragraph of Defendants' Statement of Uncontroverted Material Facts. If plaintiff denies that any of those facts are uncontroverted, he must provide evidence contradicting the facts asserted by defendants. Calhoun must remember that it is his duty to provide admissible evidence to show that there was more than negligence here, as mere negligence is not a constitutional violation.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for an extension of time to respond to summary judgment [88] is **GRANTED IN PART** as follows: plaintiff must file a supplemental response to the motion for summary judgment no later than **May 13, 2016**.  Defendants will then have until **May 27, 2016** to file a reply brief.

**IT IS FURTHER ORDERED** that plaintiff's remaining motions [73, 75, 80, 90, 95, 96, 100, 105] are **DENIED**.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 23rd day of March, 2016.